UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**REGINALD RICHARD (#378006)**                                   CIVIL ACTION

**VERSUS**

**TIMOTHY ROGERS, WARDEN**                                   NO. 05-1093-JJB-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2008.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**REGINALD RICHARD (#378006)**

**VERSUS**

**TIMOTHY ROGERS, WARDEN**

**CIVIL ACTION**

**NO. 05-1093-JJB-DLD**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  The petitioner, Reginald Richard, challenges his 2001 conviction and ten-year sentence, entered upon a plea of *nolo contendere*, on one count of sexual battery of the infirm, a violation of La. R.S. 14:93.5.  He complains (1) that the State did not present an adequate factual basis for acceptance of the plea and that the plea was rendered involuntary by reason of a post-plea change in Louisiana law, (2) that his plea was not freely and voluntarily given because of ineffective assistance of counsel prior to trial, and (3) that the trial court erred in pre-trial rulings which both denied the petitioner's request to subpoena evidence from a third party and rejected the petitioner's request that a responsive verdict be provided to the jury.

Upon a review of the petitioner's application, it appears that, in February, 2001, immediately prior to trial, after the choosing of a jury, and after rulings on pre-trial motions, the petitioner withdrew his prior plea of "not guilty" and entered a plea of *nolo contendere* to the crime of sexual battery of the infirm.[2]  He was thereafter sentenced to a term of ten years' imprisonment at hard

---

[1] The petitioner has also filed a motion for injunctive relief, rec.doc.no. 22.  Inasmuch as the Court finds the petitioner's arguments in support of this motion to be largely indistinguishable from those presented in his application for habeas corpus, and inasmuch as the Court finds, in the instant Report and Recommendation, that the petitioner's application for a writ of habeas corpus should be denied as being without merit, the Court recommends that the petitioner's motion for injunctive relief be denied as well.

[2] The original charge was sexual battery, a violation of La. R.S. 14:43.1.

Page 1 of 12

labor, with this sentence being suspended, subject to the petitioner serving a five year term of active supervised probation. Inasmuch as the petitioner reserved the right to appeal certain pre-trial rulings, he appealed to the Louisiana Court of Appeals for the First Circuit, wherein he asserted the claims (1) that the trial court erred in granting the State's pre-trial motion in limine, thereby excluding impeachment testimony from a defense witness regarding the accusers's alleged past false sexual accusations, and (2) that the trial court erred in refusing a defense request that the jury be instructed regarding the Louisiana sexual offender registration and reporting requirements. On February 15, 2002, the First Circuit Court affirmed the rulings of the trial court, State v. Richard, 812 So.2d 737 (La. App. 1st Cir.), and on November 22, 2002, the Louisiana Supreme Court denied supervisory review, State v. Richard, 829 So.2d 1038 (La. 2002).[3]

In April, 2003, the petitioner filed an application for post-conviction relief in state court, asserting the claims that are raised in this proceeding. The state district court dismissed the petitioner's application after an evidentiary hearing conducted on December 8, 2003. The petitioner's subsequent applications for review in the appellate courts were denied, on December 1, 2004 and April 22, 2005, respectively, see, e.g., State v. Richard, 899 So.2d 558 (La. 2005).

On September 14, 2005, the petitioner filed the instant application for federal habeas corpus relief in this Court. The State concedes that the petitioner has exhausted state court remedies relative to the claims asserted herein as mandated by 28 U.S.C. § 2254(b) and (c).

## DISCUSSION

Initially, it appears to this Court that the petitioner's claim number 3 above (relative to the trial court's asserted error in refusing to allow issuance of a subpoena for the accuser's employment records and in refusing to allow a responsive verdict of "simple battery"), although technically

---

[3] While the petitioner's appeal was pending, he apparently violated the terms of his supervised probation and, upon revocation thereof in December, 2001, he was remanded to the custody of the Louisiana Department of Public Safety and Corrections to serve his term of confinement. He has since been released from confinement.

exhausted, is subject to dismissal by reason of procedural default. In this regard, it appears that on direct appeal, the petitioner attempted to present these issues in a supplemental pleading to the appellate court, but the court declined to address same on procedural grounds inasmuch as the supplemental pleading was filed too late, after the matter had already been submitted. Thereafter, when these issues were presented to the state district court in connection with the petitioner's subsequent application for post-conviction relief, the court declined to address same upon a finding that the issues must have been presented on direct appeal because they were not of constitutional magnitude as required for consideration in connection with an application for post-conviction relief, citing Article 930.3 of the Louisiana Code of Criminal Procedure. Accordingly, the court clearly relied on a state procedural rule in denying consideration of these claims.

When a state court decision to deny post-conviction relief rests on a state procedural ground that is independent of the federal question raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's federal claims. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Moore v. Roberts, 83 F.3d 699 (5th Cir. 1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." Coleman, supra, 501 U.S. at 729-730, 111 S.Ct. at 2554:

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

Id. at 731-32, 111 S.Ct. at 2554-55 (quoting Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982)); Moore, supra, at 703. This rule applies even if the state court addresses the substance of the claim in the alternative. Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); Fisher v. State, 169 F.3d 295, 300 (5th Cir. 1999).

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been, as here, explicitly based on a state procedural rule. Moore, supra, at 702; Sones v. Harbett, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." Id. The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by (1) demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, supra, 501 U.S. at 750, 111 S.Ct. at 2565; Moore, supra, at 702. The petitioner has made no attempt to satisfy these showings.

Turning to a substantive review of the petitioner's remaining claims, the standard for review in this Court is that set forth in 28 U.S.C. § 2254. Specifically relevant is 28 U.S.C. § 2254(d)(1), which provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See also Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. See 28 U.S.C. § 2254(d)(1)-(2); Montoya v. Johnson, 226 F.3d 399 (5th Cir. 2000), cert. denied, 532 U.S.

1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. Montoya, supra, 226 F.3d at 404. See also Williams v. Taylor, supra, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The petitioner's claims that his plea was involuntary and that he was denied the effective assistance of counsel at trial present mixed questions of law and fact and, therefore, 28 U.S.C. § 2254(d)(1) governs the analysis. In other words, this Court may not grant the petitioner's request for habeas relief unless it concludes that the trial court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief in the instant case.

With regard to the petitioner's claim that his guilty plea was not free and voluntary because he did not ultimately receive the deal which he made with state prosecutors, the record reflects that the petitioner was initially charged with the offense of sexual battery, a violation of La. R.S. 14:43.1, based upon allegations by the accuser that, on the morning of the offense, she awoke to find the petitioner with his hand upon her thigh. According to the state's proffer at the sentencing hearing, the accuser would have testified that the petitioner then proceeded to hold her down as he touched her genitals. She rebuffed his advances, grabbed a cannister of mace, threatened to utilize same if the petitioner did not cease his conduct, and left the premises. It appears from the record that there were no other witnesses to the alleged offense and that there was no physical evidence. Accordingly, as recognized by all parties, although the petitioner denied that the offense took place, he faced a lengthy potential criminal sentence based solely upon the testimony of his accuser.

The record further reflects that the offense of sexual battery, with which the petitioner was charged, carried with it a collateral consequence, i.e., that the offender, after serving any sentence of incarceration, would be subject to sexual offender registration and reporting requirements under Louisiana law. The record is clear that the petitioner was explicitly reluctant to face any such requirement.

On the morning of trial, after the choosing of the jury, and after motions asserted by the defense were rejected by the trial court, the petitioner entered into a plea agreement with the prosecution, pursuant to which he withdrew his plea of not guilty and entered a plea of *nolo contendere* to a charge of sexual battery of the infirm, a violation of La. R.S. 14: 93.5. Pursuant to the plea agreement, the petitioner reserved his right to appeal certain pretrial rulings, and it was agreed that he would receive a suspended sentence of ten years in confinement, with a five-year period of active supervised probation. In addition, as noted in the plea colloquy, he would not be subject to the registration and reporting requirements because the law, as then written, did not require registration and reporting with this offense.

While his case was on appeal, the petitioner's probation was revoked based upon violation of the terms of his supervised release, and his sentence was made executory. In addition, the Louisiana Legislature subsequently amended the sexual offender registration and reporting statute so as to include the offense of sexual battery of the infirm as one of the offenses subject to the statute. Accordingly, upon his release from confinement, the petitioner became subject to the provisions of that statute. He contends, therefore, that he never received the benefits of the deal which he made with the prosecution and that his plea has thus been rendered involuntary and unenforceable.

In the Court's view, this argument must be rejected. It is clear from the record that the plea was entered into voluntarily on the date it was so entered. There was no alleged wrong-doing or misrepresentation by the prosecutor or the state court judge. Further, the petitioner did not labor

under any misinformation supplied by his counsel as to the nature of the charges against him or to the potential sentence. It is further clear that the petitioner obtained a substantial benefit as a result of the plea.  Several of his pretrial motions had been denied to his detriment and, as noted at the hearing on post-conviction review, his counsel was concerned that the trial judge's conservative temperament would likely result in a sentence of actual confinement if the petitioner were convicted, especially in light of the petitioner having had a  prior conviction for which he had not received time in jail.  Under the plea agreement, he avoided this potential sentence of actual confinement.  Further, as the law was then written, he avoided any registration and reporting requirements under state law, which was a matter of significance to him.  Accordingly, it is clear that the plea agreement was a beneficial one.  Now, however, he contends that because of the subsequent change in the state reporting requirements, he has not gotten what he bargained for, that the plea was therefore involuntary, and that the conviction must be overturned.

In rejecting this argument, the state court commissioner relied heavily upon the United States Supreme Court decision in United States v. Brady, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  In Brady, the criminal defendant pled guilty to kidnaping because, by doing so, he would avoid the possibility of the death sentence, which was a then-permissible penalty under the pertinent criminal statute.  Upon a subsequent determination by the Supreme Court, however, that the death penalty could not be applied, the defendant sought to withdraw his plea, arguing that the plea was involuntary because made in fear of a harsher penalty which could not constitutionally have been imposed.  The Court rejected this argument, however, finding that the plea, at the time it was entered into, was entirely voluntary and was based upon competent legal advice relative to an assessment of then-applicable penalties.  In such instance, the Court concluded, where there is a subsequent change in the law which calls into question such assessment, it is not mandatory that the conviction be overturned:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the

> prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents ... a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested upon a faulty premise.

Although the situation presented in the instant case is not directly analogous to that presented in Brady, the Brady decision and rationale are persuasive. Whereas the defendant in Brady pleaded guilty in order to obtain the perceived benefit of avoidance of the death penalty, the defendant in the instant case pleaded no contest to a lesser charge in order to obtain the perceived benefit of avoidance of the sex offender registration statute and the actual benefit of a suspended sentence without jail time. In neither instance were these bargains wholly beneficial, but at the time that the pleas were entered, there was a valid basis for the assessment made as to their relative merits. As noted by the state court Commissioner on post-conviction review, the petitioner in fact got what he bargained for on the date that he entered into his plea, i.e., a suspended sentence and an avoidance of mandatory sex offender registration requirements. Counsel was not required to anticipate future changes in the law. Further, no promises were made at that time by counsel or the court, nor could there have been because "neither the Court nor Counsel could guarantee that the law would not change to the Defendant's detriment after the plea." Commissioner's Report, p. 5. The Commissioner therefore determined, correctly in this Court's view, that the defendant's plea was freely and voluntarily given in the instant case because it was made upon a fair assessment of then-existing law. Accordingly, this does not present a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States".

Further, the Court notes that the sex offender registration and reporting requirements have been determined to be collateral non-punitive consequences of the defendant's plea to the offense charged, Moore v. Avoyelles Correctional Center, 253 F.3d 870 (5th Cir.), cert. denied, 534 U.S. 1008, 122 S.Ct. 492, 151 L.Ed.2d 404 (2001); State ex rel. Olivier v. State, 779 So.2d 735 (La. 2001), and the Court is loathe to conclude that post-judgment changes in such collateral components, even if they were critical to an accused's earlier determination to plead, may lightly form the basis for overturning a conviction based upon such a plea. The Louisiana Supreme Court has held that the registration and reporting requirements for sex offenders are non-punitive adjuncts to certain enumerated sex offenses and are designed to administratively assist law enforcement, prosecutors and the courts in protecting the public and apprehending violators. Olivieri, supra. Accordingly, the imposition of these requirements upon offenders after their convictions does not offend the *ex post facto* clause of the United States Constitution. Id. The Court believes, therefore, that it would be inequitable to allow the petitioner in the instant case to avoid the consequences of his plea merely because he expressed, at his plea colloquy, that his determination to plead guilty to the reduced charge was based, in part, on the absence of reporting requirements, whereas another criminal defendant, to whom the reporting requirements were similarly made applicable after conviction, would have no such entitlement where he did not express a similar reliance.

Finally, the petitioner contends that he received ineffective assistance of counsel prior to trial and that such ineffectiveness compelled him to enter the plea. Specifically, the petitioner contends that his retained counsel was unprepared for trial, did not attend court appearances or pursue discovery, and made representations regarding the potential merit of grounds for appeal.

Our review of the petitioner's ineffective assistance of counsel claim is governed by the familiar test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), i.e., deficient performance and prejudice. To prove deficient performance, "a petitioner must demonstrate that counsel's representation 'fell below an objective standard of

reasonableness.'" Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland, supra).  We must "accord substantial deference to counsel's performance, applying the strong presumption that counsel performed adequately and exercised reasonable professional judgment."  Titsworth v. Dretke, 401 F.3d 301 (5th Cir. 2005) (quoting Strickland, supra).  To establish prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra.

When a petitioner challenges the voluntariness of his guilty plea entered pursuant to the advice of counsel on ineffective assistance grounds, he must establish that his counsel's advice fell below the range of competence demanded of an attorney in a criminal case.  See Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Armstead v. Scott, 37 F.3d 202 (5th Cir. 1995); Ward v. Dretke, 420 F.3d 479 (5th Cir. 2005).  Further, he must show prejudice by establishing that "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial."  Armstead, supra.

Applying the above standard, the state court Commissioner, after conducting an evidentiary hearing, concluded that there had been no actionable deficiency in the legal representation provided by petitioner's counsel prior to trial.  Whereas the petitioner contends that his counsel was unprepared for trial, the evidence adduced at the hearing reflects that attorney Boustany filed motions for discovery and had been provided with open-file discovery from the prosecution and, so, was in possession of all pertinent evidence discoverable from the State.  The evidence further reflected that counsel had interviewed the petitioner and witnesses prior to trial, albeit some on the evening before trial was to commence.  As noted at the hearing, the proceedings were relatively uncomplicated, presenting only a single charge and presenting a classic "he said - she said" confrontation, with no direct eyewitnesses other than the accuser and the accused.  As conceded

by the petitioner, he believed that attorney Boustany "pretty much knew what the case was about". And as further conceded at the hearing, the resolution of the trial was likely to hinge largely upon the jury's determination of the credibility of these two individuals, and attorney Boustany correctly advised his client that in such circumstances, there could be no guarantee regarding the outcome. As such, particularly in light of the fact that the petitioner had a prior felony conviction that would be brought before the jury if he testified, attorney Boustany was rightly concerned that the credibility determination might go against the petitioner. On the morning of trial, counsel engaged in voir dire of the prospective jurors and presented several motions which were argued before the trial court. As these were decided adversely to the petitioner, the prospect of trial clearly became less attractive. As noted by the Commissioner, the petitioner's primary concerns with the upcoming criminal proceedings were (1) avoidance of incarceration and (2) avoidance of sex offender registration. Through Mr. Boustany's negotiation on the petitioner's behalf, both of these concerns were addressed and resolved in the petitioner's favor through the negotiated plea. Based upon these considerations, the Commissioner concluded that counsel's performance had not been deficient:

> Under the circumstances of this case, and given that Defense Counsel overcame the primary fears of the Defendant by obtaining a deal with the State that would keep the Defendant out of jail and also from having to register as a sex offender, the evidence offered at the PCR hearing does not preponderate in favor of the claim of ineffective assistance. On the contrary, Mr. Boustany's familiarity with the case and representation of the Defendant appeared to be very professional. Although there were allegations to the contrary, there did not appear to be any evidence to support the allegations that he was unprepared or unfamiliar with the case and the defense. He testified that he had previously represented the Defendant in a felony drug case ... and that he had had that conviction expunged in anticipation of the instant trial in an attempt to keep it from being used against the Defendant in the instant trial. He further testified that he discussed the Defendant's options fully with him prior to the plea and advised him to take the plea rather than chance a conviction on the testimony of the victim.

The Court finds no error in this determination. Although the petitioner complains of counsel's failure to appear at certain pretrial schedulings, there is no showing of prejudice inasmuch as Mr. Boustany testified that he was satisfied with discovery and saw no need to be present for

appearances at which no pretrial motions were pending or required his attention. Although the petitioner points to the fact that counsel moved to withdraw from representation approximately one week prior to trial, the evidence reflects that this motion was prompted solely by a contractual fee dispute between petitioner and counsel, and that this motion bore no relevance to the issue of counsel's preparedness for trial. Although the petitioner seeks to second-guess certain decisions made by counsel during voir dire examination and jury selection, the record reflects, to the contrary, that Mr. Boustany engaged in spirited questioning of prospective jurors and exercised challenges, both peremptory and for cause, seeking to obtain the best jury available. There is no suggestion in the record that he failed to exercise competent professional judgment in these determinations. Finally, there is no persuasive evidence in the record that petitioner's attorney promised success on appeal. Rather, the evidence preponderates that Mr. Boustany merely assured the petitioner that there were appealable issues which could and/or should be pursued. In short, it is this Court's conclusion that there was no error in the state court's determination that any alleged deficiencies in the performance of petitioner's counsel were not shown to be prejudicial in fact.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the petitioner's motion for injunctive relief, rec.doc.no. 22, be denied. See note 1, supra. It is the further recommendation of the Magistrate Judge that the petitioner's application for habeas corpus relief be denied and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 4, 2008.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**